LOBRANO, Judge.
Herlin Joseph Smith (decedent), son of Elizabeth Jackson Smith, was killed in a motorcycle-truck collision with a New Orleans Parkway and Park Commission (Commission) truck driven by its employee, Yvonne Myles. The accident occurred as Myles made a left turn in front of decedent’s motorcycle as he was approaching from the other direction.
As a result of her son’s death, Smith filed the instant suit against Myles, the Commission and the City of New Orleans. The trial court rendered judgment in favor of Smith concluding that Myles, the Commission and the City were 75% at fault, and that decedent was 25% at fault. In its reasons for judgment, the Court concluded that Myles was negligent in turning left in front of decedent’s motorcycle which had the right of way. The court also reasoned that the decedent had a clear view of the truck as it commenced its turn and should have reacted sooner.
The City perfects this appeal.[1] It argues that the court erred in assessing only 25% of the fault to decedent. In support, it refers to the testimony of Officer Louis Kistner, III, eyewitness Shaun Jones, and Commission employee, Dennis Williams. Smith, in brief, argues that the court erred in assessing any fault to decedent.
The issue for our review is whether the trial court was manifestly erroneous in apportioning only 25% of the fault to the decedent.
In considering this factual issue, we first note that Louisiana law imposes a very high degree of care on a left turning motorist, requiring him to take every reasonable precaution to insure that the turn can be made without endangering on-coming vehicles. Baker v. City of New Orleans, 558 So.2d 603 (La.1990); La.R.S. 32:122.
We further note the guidelines set out in Watson v. State Farm Fire and Casualty Insurance, 469 So.2d 967 (La.1985) in apportioning fault. These include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferi- or and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The evidence shows that on June 17, 1988, at about 2:20 p.m., Myles and her crew were returning to the Commission’s yard on Gentilly Blvd. She was driving a pickup truck towing a trailer with a lawnmower in it.
Gentilly Blvd. is a six lane street. There are three lanes for eastbound traffic and three for westbound traffic. The east and west traffic is separated by a six foot, seven inch median. Myles was traveling in the eastbound, left hand lane. In order to turn into the yard she had to turn left, travel through the opening in the median and cross the three lanes of westbound traffic. As she made the turn, decedent struck the trailer near its hitch with the *1090 truck and was dragged several feet into the Commission’s driveway.
Myles testified that she stopped at the intersection to wait for another Commission truck to turn left before she turned left into the driveway. She stated that she never saw the decedent’s motorcycle, and that she crossed all three westbound lanes of traffic before the collision occurred. She stated that she had an unobstructed view of the westbound lanes of traffic.
Officer Louis J. Kistner, III, a New Orleans Police Officer assigned to the Fatality Unit, was qualified to testify as an expert in the field of accident reconstruction. He investigated the scene following the collision, and spoke to several witnesses. Based on his investigation, he opined that the decedent had been traveling at 40 m.p.h., that Myles had stopped prior to turning left, and that it took her 4.2 seconds to travel from a stopped position across the westbound lanes of Gentilly Blvd. Kistner testified that he was unable to determine the exact position of the motorcycle at the time the truck began its left turn. However, he made various calculations taking into account braking efficiency, friction and reaction time, in each case assuming a speed of 40 m.p.h. He determined that the decedent could not have been more than 248 feet away as the truck began to turn. Assuming 80% braking efficiency, he estimated that the decedent could have stopped within a range of 93.54 feet to 111.66 feet prior to the collision.
Kistner testified that the gouge marks found on the roadway indicated that the decedent had laid down the motorcycle pri- or to the collision. He stated that the absence of skid marks does not tell conclusively whether or not the braking process had taken place. There can be braking without skid marks — the absence only indicates that the wheels did not lock. Although he stated that there was no physical evidence to indicate that the decedent slowed down until he was 16 feet away, he testified that it is almost impossible to lay down a motorcycle at 40 m.p.h. In his opinion, the primary cause of the accident was Myles’ left turn into oncoming traffic when she should have yielded.
Shaun Jones, an eyewitness, testified that he was seated on a park bench on the northern side of Gentilly Blvd., facing the street, at the time of the accident. He was about 40 feet from the Commission driveway. Jones stated he saw the truck slow down, but did not see it come to a complete stop before it made the turn. As the truck was turning, he heard, the motorcycle and turned to look at it. He stated that the motorcycle was traveling at a normal rate of speed in the center lane. At that point, the motorcycle was in the immediate area, within 50 feet of the truck. He heard the motorcycle slam on its brakes, and saw the collision. When questioned by plaintiff’s counsel, Jones stated:
“Q. From your observation, was there anything that the person on the motorcycle could have done to have avoided the accident?
* * * * * *
A. No, I don’t think there was anything the bike could have did [sic] to avoid it, I don’t think.”
Smith testified that the motorcycle decedent was driving belonged to her nephew, and that she saw decedent drive it on at least two prior occasions.
Dennis Williams, a Commission employee, was seated in the back of the truck at the time of the accident. He stated that he was seated with his back against the back gate, facing forward, but that he was looking out toward his right. Williams testified that prior to turning, Myles came to a complete stop. He said that as Myles turned, he saw decedent’s motorcycle, and that it was two lights away, approximately 500 feet. He stated that decedent was speeding toward the truck when the accident happened. In Williams’ estimation, decedent was traveling as fast as 55 m.p.h., and only slowed down right before the collision occurred. He stated that he saw decedent throw on his brakes at the last second, and lay down the motorcycle.
The thrust of the City’s argument is that decedent had a clear, unobstructed view for at least five hundred feet down Gentilly *1091 Blvd. It urges that he had plenty of time to avoid the accident but that he had to have been inattentive or not keeping a proper lookout. It contends the trial court was clearly wrong in assessing only 25% of the fault to decedent. We disagree.
The evidence substantiates the fact that both drivers had unobstructed views of each other. Each should have seen the other. However, as the trial court perceived, the real problem is the location of the motorcycle when Myles began her left turn. Obviously it was not five hundred feet away because, at that distance, there would have been no accident. Officer Kist-ner opined that the furthest distance would have been two hundred forty eight feet. The only evidence which suggests that decedent was speeding is Williams’ testimony which the trial court had difficulty in reconciling. In addition, there is conflicting testimony as to whether Myles came to a complete stop prior to making her left turn.
Because of the high degree of care the law places on a left turning motorist, and our review of the evidence, we cannot say the trial court was clearly wrong in assessing 75% of the fault to Myles and 25% to decedent.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.

. The Commission is a department of the City, thus the City and Commission are referred to interchangeably.